**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Case: 1:26–mc–00146
Assigned To : Chutkan, Tanya S.
Assign. Date : 10/13/2026
Description: Misc.

| | |
|---|---|
| **IN RE SUBPOENA TO BIJOU MGBOJIKWE** | **Misc. No.** |
| UNDERLYING ACTION<br>Take-Two Interactive Software, Inc.<br>Plaintiff,<br>v.<br>PlayerAuctions, Inc., et al.<br>Defendants. | Underlying Case No.:<br>2:25-cv-01880-ODW-JDE |

**NON-PARTY BIJOU MGBOJIKWE'S OPPOSED MOTION TO QUASH SUBPOENA, OR IN THE ALTERNATIVE, MODIFY THE SUBPOENA AND MEMORANDUM OF LAW IN SUPPORT OF THE MOTION**

RECEIVED
OCT 13 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 4

A. ESA Is the Leading Advocate for the U.S. Video Game Industry. ..... 4

B. Ms. Mgbojikwe's Role at ESA. ..... 4

C. Take-Two's Lawsuit Against PlayerAuctions for Copyright and Trademark Infringement. ..... 5

D. PlayerAuctions Has Been Embroiled in Discovery Disputes in the Underlying Litigation. ..... 6

E. PlayerAuctions Dragged ESA into Unnecessary Discovery Disputes. ..... 6

III. LEGAL STANDARD ..... 10

IV. ARGUMENT ..... 10

A. PlayerAuctions Cannot Demonstrate That Ms. Mgbojikwe Possesses Relevant Information Regarding Take-Two's Knowledge of PlayerAuctions. ..... 11

B. Any Information Ms. Mgbojikwe Possesses Can Be Obtained from Take-Two. ..... 13

C. Deposing Ms. Mgbojikwe Will Subject Her and ESA to Additional Undue Burden. ..... 15

D. In the Alternative, If Testimony is Permitted, the Court Should Impose Specific Protections. ..... 16

V. CONCLUSION ..... 16

Pursuant to Federal Rule of Civil Procedure 45, Non-Party Bijou Mgbojikwe respectfully requests that this Court quash the subpoena for deposition testimony issued to her on September 25, 2026 ("Subpoena") in connection with the underlying litigation, *Take-Two Interactive Software, Inc. v. PlayerAuctions, Inc.,* No. 2:25-cv-01880 (C.D. Cal.). Alternatively, she requests an order limiting the scope, duration, and manner of examination.[1]

## I. INTRODUCTION

Since PlayerAuctions, Inc. ("PlayerAuctions") first subpoenaed non-party Entertainment Software Association ("ESA"), ESA has diligently worked and devoted significant amounts of time and resources (which has involved considerable burden and expense to ESA) to satisfy its discovery obligations. ESA's burden and expense imposed by multiple subpoenas has needlessly increased due to PlayerAuctions' pattern of engagement, which has involved a lack of timely responses, ever-changing positions on key matters that were seemingly already resolved, sending ESA threatening letters containing inaccurate accusations and ultimatums, and failing to diligently review materials ESA has provided prior to sending these threatening communications or before meeting and conferring with ESA.

ESA is a nonprofit trade association that advocates on behalf of the U.S. video game industry in a complex legal, regulatory, and public-policy environment. As part of that mission, ESA engages policymakers and regulators on issues affecting the industry and submits comments regarding intellectual-property and marketplace issues of industry-wide concern. After ESA has devoted significant resources to respond to the subpoena, PlayerAuctions demands more and now seeks to depose ESA's Senior Policy Counsel, Ms. Bijou Mgbojikwe, based principally on her

---

[1] PlayerAuctions agreed to stay the deposition pending resolution of this Motion if Ms. Mgbojikwe served this Motion on October 13, 2026. (*See* Ex. 14 at 1-2.) Ms. Mgbojikwe did so, and therefore Ms. Mgbojikwe's deposition is stayed.

signature on one publicly filed policy submission—that does not mention plaintiff Take-Two Interactive Software, Inc. (“Take-Two”) or Grand Theft Auto V (“GTA V”)—the authenticity of which is not in dispute. Because that deposition would impose an undue burden on a non-party attorney (Ms. Mgbojikwe) and is unlikely to yield relevant, non-duplicative evidence, the Court should quash the Subpoena.

Each factor of the undue-burden analysis favors quashing the Subpoena. First, PlayerAuctions cannot show that Ms. Mgbojikwe possesses any relevant knowledge of plaintiff Take-Two’s knowledge of PlayerAuctions’ allegedly infringing conduct relating to GTA V, which is the basis of PlayerAuctions’ laches defense. Instead, PlayerAuctions relies on speculation, assuming that because Ms. Mgbojikwe signed ESA’s publicly filed 2019 Notorious Markets Comment, she must possess information regarding what Take-Two knew about PlayerAuctions’ conduct, including its conduct relating to GTA V (which is not mentioned in the 2019 Notorious Markets Comment) and when it knew it. But PlayerAuctions identifies no communication between Ms. Mgbojikwe and Take-Two on that subject, no evidence that any information concerning PlayerAuctions’ allegedly infringing conduct relating to GTA V was conveyed between ESA and Take-Two, and no basis to conclude that Ms. Mgbojikwe possesses relevant knowledge beyond the contents of the public comment itself.

Second, PlayerAuctions does not need her testimony because it is Take-Two’s—and not ESA’s—alleged knowledge of PlayerAuctions’ infringement of GTA V intellectual property that is at issue in this case. PlayerAuctions can obtain, and in fact has obtained, discovery concerning Take-Two’s purported knowledge of PlayerAuctions’ infringement, including when Take-Two became aware of PlayerAuctions’ infringement, directly from Take-Two. PlayerAuctions acknowledges that Take-Two served interrogatory responses identifying documents concerning its

knowledge of PlayerAuctions' infringement, and has pursued testimony from Take-Two witnesses on that same topic. Any information PlayerAuctions seeks regarding Take-Two's knowledge of PlayerAuctions, including any infringement, is therefore available directly from the party whose knowledge is actually at issue in this case.

Third, the burden on Ms. Mgbojikwe and ESA would be substantial. Ms. Mgbojikwe is a non-party attorney and the sole ESA employee responsible for legislative policy matters. Preparing for and sitting for a deposition would divert her attention from those responsibilities, which already consume Ms. Mgbojikwe's around-the-clock attention, including nights and weekends, particularly during the current election season, and require ESA to incur additional costs associated with responding to discovery. That burden is especially unwarranted where PlayerAuctions has failed to show that the deposition is reasonably likely to yield unique or relevant evidence or has any nexus to Take-Two's knowledge of infringement that could support PlayerAuctions' defenses.

ESA did everything it could to avoid bringing this dispute to the Court. ESA repeatedly requested to meet and confer, and offered to make Ms. Mgbojikwe available for a limited two-hour deposition if PlayerAuctions would forgo seeking depositions of other ESA personnel. PlayerAuctions refused and instead served the Subpoena. Then, one week before the noticed deposition, PlayerAuctions proposed a "compromise" while simultaneously reneging on its prior agreement from August 11, 2026, that disputes regarding ESA's document production obligations had been resolved. That reversal left ESA unable to rely on any agreement with PlayerAuctions and made this motion unavoidable. Accordingly, Ms. Mgbojikwe respectfully requests that the Court quash the Subpoena.

## II. BACKGROUND[2]

### A. ESA Is the Leading Advocate for the U.S. Video Game Industry.

ESA is a U.S. trade association that represents the interests of the leading publishers of video games. ESA has over 20 member companies, including Take-Two. While ESA offers extensive benefits to its members, two in particular are relevant here: intellectual property protection and policy advocacy.

ESA members own the intellectual property, including any copyright, patent, and trademark rights, associated with their products. However, ESA is authorized to represent its members in certain enforcement actions against third parties that infringe the members' intellectual property rights, *e.g.*, issuing a takedown request under the Digital Millennium Copyright Act.

In addition, ESA develops policy priorities and strategies to shape the legislative and regulatory framework governing the video game industry. As one example, when the Office of the U.S. Trade Representative requests comments to identify online and physical markets to include in its Review of Notorious Markets for Counterfeiting and Piracy, ESA may submit a comment identifying such markets. (See, *e.g.,* Ex. 3.) Consistent with ESA's role as an industry trade association, ESA's policy submissions address industry-wide concerns and are not intended to convey information regarding any particular member company's litigation positions, investigations, or knowledge concerning specific disputes and are also not focused on individual member games. (See, *e.g., id.)*

### B. Ms. Mgbojikwe's Role at ESA.

Ms. Mgbojikwe is ESA's Senior Counsel for Policy. (Ex. 2 ¶ 6.) In her role, she is the only ESA policy employee advising on policy matters in her portfolio, where she supports engagement

---

[2] Citations to "Dkt." refer to the docket entries in the underlying litigation.

with government officials regarding issues impacting the video game industry, including intellectual property and content moderation. (*Id.* ¶¶ 6-7.) Ms. Mgbojikwe is currently working around the clock, including nights and weekends, on her job responsibilities, which have escalated as midterm elections approach. (*Id.* ¶¶ 7, 13.)

### C. Take-Two's Lawsuit Against PlayerAuctions for Copyright and Trademark Infringement.

Take-Two is the publisher and copyright owner of the *Grand Theft Auto* ("GTA") video game series. (Dkt. 30 ¶ 1.) In 2013, the latest entry in the franchise, GTA V, launched. (*Id.*) According to Take-Two, PlayerAuctions operates its website to create infringing digital goods and provide illegal services, such as hosting listings where sellers offer "Modded Accounts," "Money Drop Services," and "Account Boosting Services." (*Id.* ¶¶ 3, 29-32.) Take-Two alleges that this amounts to copyright and trademark infringement relating to GTA V and filed suit against PlayerAuctions and its affiliates on March 4, 2025. (Dkt. 1 ¶ 3.)

In response, PlayerAuctions raised a litany of affirmative defenses, including laches and similar delay-based defenses. (See Dkt. 33 ¶¶ 99-125.) The crux of these affirmative defenses is that Take-Two knew of PlayerAuctions' allegedly infringing conduct relating to GTA V for years but delayed in filing suit. (See, *e.g., id.* ¶ 121.) Specifically, PlayerAuctions asserts that Take-Two has been aware of PlayerAuctions' website since around 2013. (*Id.*) PlayerAuctions has not disclosed its basis for this allegation nor suggested that ESA played any role in informing Take-Two of any such matter.

Given its laches defense, PlayerAuctions has sought discovery from Take-Two regarding its knowledge of PlayerAuctions, including propounding interrogatories and seeking testimony in depositions. (*See, e.g.*, Ex. 4.) In response, Take-Two has provided information, such as

identifying documents relating to how it obtained knowledge of PlayerAuctions. (*See id.*; *see also* Ex. 5 (consisting of documents identified by Take-Two that are not confidential).)

### D. PlayerAuctions Has Been Embroiled in Discovery Disputes in the Underlying Litigation.

The underlying litigation has been rife with discovery motion practice. (*See* Dkt. 103 at 6.) The court in the underlying litigation noted that since March 2026, the parties had filed a discovery motion every month. (*Id.*) The court admonished the parties that the "pace and volume at which counsel are submitting discovery motions here cannot continue." (*Id.* at 7.) The court further instructed the parties to "strive to be cooperative, practical and sensible" regarding discovery and that they "should turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests." (*Id.*)

### E. PlayerAuctions Dragged ESA into Unnecessary Discovery Disputes.

On June 11, 2026, PlayerAuctions served a non-party subpoena on ESA requesting documents. (Ex. 6 at 1.) At that time, PlayerAuctions did not serve a subpoena for a deposition. The document subpoena largely included requests that were duplicative of requests PlayerAuctions had already propounded on Take-Two. (*Id.* at 3.) Indeed, PlayerAuctions acknowledged that it was seeking this duplicative discovery because Take-Two was supposedly "stonewalling" or otherwise improperly refusing to produce documents. (*Id.*)

Two months after serving the document subpoena, PlayerAuctions raised the prospect of deposing ESA employees Mr. Stanley Pierre-Louis (ESA's president and chief executive officer) and Ms. Mgbojikwe. (Ex. 7 at 6.) PlayerAuctions claimed they had knowledge of PlayerAuctions in 2018 and 2019, respectively, because they signed ESA's comments submitted in response to the government's requests for comment for its Review of Notorious Markets for Counterfeiting and Piracy (the "Notorious Markets Comments"). (*Id.*) However, PlayerAuctions did not assert that

either witness had knowledge of Take-Two's knowledge of PlayerAuctions, its infringing conduct, or any specific knowledge relating to GTA V. (*See id.)*

Although PlayerAuctions failed to show that either deposition was warranted, ESA invited PlayerAuctions to meet and confer about the proposed depositions. (Ex. 8 at 4.) PlayerAuctions ignored ESA's request. ESA next heard from PlayerAuctions via a September 2, 2026, letter, where PlayerAuctions reiterated its view that the publicly filed submissions supported knowledge attributable to Take-Two and asserted an authentication need.[3] (Ex. 9 at 3-4.)

ESA again requested to meet and confer, and PlayerAuctions finally agreed. (Ex. 10 at 3-4.) At the meet and confer on September 15, PlayerAuctions could not explain why the Notorious Markets Comments were relevant given that they did not reference Take-Two, GTA V, or the alleged infringement. (*Id.* at 4.) Nevertheless, to avoid burdening the Court, ESA offered to make Ms. Mgbojikwe available for a limited deposition if PlayerAuctions agreed to forgo depositions of other ESA employees. (*Id.*) PlayerAuctions refused. (Ex. 11 at 1.)

PlayerAuctions then proceeded to serve the deposition subpoena on Ms. Mgbojikwe in a manner that highlights PlayerAuctions' continuous pattern of needlessly imposing burden and expense on Ms. Mgbojikwe and ESA. On September 21, which was Yom Kippur and thus a day where key employees at ESA were out in observance of the holiday, PlayerAuctions rejected ESA's compromise regarding Ms. Mgbojikwe's deposition and stated it would proceed with its "discovery efforts in the usual course of business." (*Id.*) PlayerAuctions did not request ESA's counsel to accept service electronically or ask when Ms. Mgbojikwe was available to accept service of the subpoena. (*See id.*) Instead, the very next day, PlayerAuctions proceeded to send a

[3] To the extent authentication is required, there are less burdensome means to authenticate the 2019 Notorious Markets Comment, including stipulation by the parties. (*See* Ex. 10 at 4.)

process server to ESA's offices, who insisted that Ms. Mgbojikwe come down to the building's loading dock to sign for her subpoena at a time when she was not available. (*See* Ex. 12 at 7.) This behavior resulted in unnecessary and unmerited burden and stress on Ms. Mgbojikwe as well as other ESA employees who were intimidated to have such an individual making demands, especially demands ESA could not satisfy due to Ms. Mgbojikwe being unavailable.

In order to put an end to this, ESA's counsel emailed PlayerAuctions' counsel, while the process server was continuing to stand at ESA's loading dock, explaining that the holiday had inhibited their ability to consult with key ESA stakeholders and agreeing to accept service on Ms. Mgbojikwe's behalf to avoid the server waiting or making a return trip. (Ex. 12 at 7.) It was not until three days later, on September 25, that PlayerAuctions' counsel served Ms. Mgbojikwe's subpoena noticing her deposition for October 15. (Ex. 1.)

Before filing this Motion, ESA made one final effort to avoid motion practice by requesting another meet and confer. (Ex. 12 at 5.) Rather than address the deposition subpoena, PlayerAuctions attempted to reopen disputes regarding ESA's document production, despite the parties having previously resolved those issues. (*Id.* at 2-4; *see also* Ex. 7 at 6.) Specifically, PlayerAuctions had previously challenged ESA's objections to certain PlayerAuctions' document requests, which sought privileged information and imposed substantial burdens, including requests for materials dating back to 2013 and documents readily obtainable from Take-Two. (*See* Ex. 7 at 1.) Then, in its August 11, 2026 letter, PlayerAuctions proposed a "compromise": it stated that it would "consider refraining from filing a Motion to Compel" if, "[i]n addition to the documents that ESA [had] already agreed to search for and produce," ESA agreed to search for and produce materials responsive to Request Nos. 8 and 9. (*Id.* at 6.) ESA accepted that proposal and, on August 18, 2026 confirmed that it had conducted a reasonable search and was "not aware of any documents

responsive to Requests Nos. 8 and 9." (Ex. 8 at 4.) Having obtained exactly the additional search and response it requested, PlayerAuctions had no basis to resurrect disputes over ESA's document production. By PlayerAuctions' own proposal, those issues should have been resolved, leaving no legitimate reason to condition a meet and confer regarding the deposition subpoena on re-litigating matters the parties had already put to rest.

In its October 2, 2026, correspondence, ESA notified PlayerAuctions that these purported issues relating to ESA's document production were resolved and moot in light of the previous agreement. (Ex. 12 at 2-3.) ESA and PlayerAuctions met and conferred on October 2. (*See id.* at 1.) PlayerAuctions' counsel agreed to consult its client about deposition limits and further review ESA's supplemental responses, promising a response early the following week. (*See* Ex. 12 at 1.) ESA followed up but had not received a response as of October 7. (*See* Ex. 13 at 2.) Given the impending October 15 deposition date, the delay forced ESA to incur preparation and motion-related expenses.

On October 8—one week before the noticed deposition date—PlayerAuctions offered to withdraw the Subpoena and forgo deposing any other ESA employee and instead serve a subpoena for a Rule 30(b)(6) deposition, limited to "no less than 4 hours," and conducted remotely (though it noted that it "would reserve the right to hold follow-up depositions as needed" so it is unclear how that is forgoing deposing any other ESA employee). (Ex. 13 at 1.) This proposal only served to expand the burden on ESA, requiring extensive preparation of a 30(b)(6) witness and setting the length of the deposition to at least 4 hours, even though PlayerAuctions had previously agreed to a 4-hour cap (and acknowledged the deposition would likely take 3 hours or less) and still left the door open for PlayerAuctions to demand additional depositions from other ESA employees. (*See* Ex. 4 at 2.) At the same time, PlayerAuctions reneged on its previous agreement that disputes

regarding document production issues were resolved (*id.*), calling into question whether it would honor any agreement regarding depositions. (*See* Ex. 14. at 1-2.) ESA seeks the Court's assistance in preventing PlayerAuctions' continuing pattern of engagement which has imposed undue burden and expense on ESA.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 45 mandates that a party issuing and serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(b)(1). Thus, a court must quash or modify a subpoena that subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv).

Importantly, "'[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs' in a Rule 45 inquiry." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,* 300 F.R.D. 406, 409 (C.D. Cal. 2014). "[N]on-parties should not be burdened in discovery to the same extent as the litigants themselves," and any discovery "should be narrowly drawn to meet specific needs for information." *Khan v. Rogers,* No. 17-CV-05548, 2018 WL 5849010, at *4 (N.D. Cal. Nov. 6, 2018) (cleaned up).

## IV. ARGUMENT

This Court should quash the Subpoena because PlayerAuctions seeks to depose a non-party attorney on speculation rather than evidence and has failed to explore less burdensome alternatives to obtain the information it is seeking. In particular, Ms. Mgbojikwe has no demonstrated involvement in the underlying dispute, no apparent knowledge concerning Take-Two's awareness of PlayerAuctions beyond the contents of ESA's public submissions, no apparent knowledge concerning Take-Two's awareness of PlayerAuctions' activities relating to GTA V which is the basis of the underlying case, and no unique information unavailable from Take-Two itself. Rule

45 does not permit imposing the burden of a deposition on a non-party attorney under such circumstances.

"To determine whether a subpoena imposes undue burden on the recipient, the Court must balance the relevance of information sought, the requesting party's need for the information, and the extent of the burden imposed." *Monster Energy Co. v. Vital Pharm., Inc.,* No. 5:18-CV-01882, 2020 WL 2405295, at *5 (C.D. Cal. Mar. 10, 2020). Each of these factors favors quashing the Subpoena.

PlayerAuctions seeks the extraordinary step of deposing a non-party attorney who works for a trade association based solely on the fact that she signed a public comment submitted on behalf of ESA in 2019 which does not contain any reference to GTA V, the subject at issue in this case. PlayerAuctions has identified no evidence that Ms. Mgbojikwe possesses unique personal knowledge regarding Take-Two's awareness of PlayerAuctions' allegedly infringing conduct at issue in this case. Nor can it demonstrate any need for such testimony, because PlayerAuctions has already obtained discovery from Take-Two itself regarding that very topic (and Take-Two's interrogatory responses confirm that it did not learn about PlayerAuctions' infringement through the 2019 Notorious Markets Comment signed by Ms. Mgbojikwe) and continues to pursue discovery from additional Take-Two witnesses. Any marginal value of Ms. Mgbojikwe's testimony is therefore substantially outweighed by the burden imposed on a non-party attorney and ESA, a non-party nonprofit that has already been unduly burdened by PlayerAuctions' behavior.

### A. PlayerAuctions Cannot Demonstrate That Ms. Mgbojikwe Possesses Relevant Information Regarding Take-Two's Knowledge of PlayerAuctions.

PlayerAuctions contends Ms. Mgbojikwe possesses relevant information regarding Take-Two's "actual knowledge of alleged copyright infringement on the PlayerAuctions website"

because she signed ESA's 2019 Notorious Markets Comment. (Ex. 9 at 3.) This argument is based on rank speculation and should be rejected.

The issuing party "must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Khan*, 2018 WL 5849010, at *4. Relevance for non-party discovery requires "a stronger showing of relevance than for simple party discovery." *Monster Energy*, 2020 WL 2405295, at *6. Speculation that a witness can provide relevant testimony fails to meet this standard. *See Amini*, 300 F.R.D. at 411.

PlayerAuctions' theory rests on a series of unsupported assumptions. It assumes that because Ms. Mgbojikwe signed ESA's 2019 Notorious Markets Comment, she necessarily possessed personal knowledge regarding PlayerAuctions. It further assumes that Ms. Mgbojikwe communicated any such knowledge to ESA member companies, and to Take-Two specifically, and somehow informed Take-Two's understanding of PlayerAuctions. PlayerAuctions offers no evidence supporting any step in this chain. The Subpoena therefore rests on conjecture rather than a concrete showing that Ms. Mgbojikwe possesses relevant testimony.

In addition, PlayerAuctions fails to show that the 2019 Notorious Markets Comment is relevant to this case. Notably, the 2019 Notorious Markets Comment does not reference Take-Two or GTA V at all, much less discuss that Take-Two knew PlayerAuctions was hosting infringing GTA V content on its website. (*See* Ex. 3 at PA011866.) Rather, the document generally describes PlayerAuctions' website as having content relating to "over 200 ESA member titles," which does not demonstrate that Ms. Mgbojikwe can provide any testimony regarding Take-Two's knowledge of the specific allegations at issue in the underlying litigation, which specifically relate to GTA V. (See *id.*)

Instead, PlayerAuctions speculates that Ms. Mgbojikwe's and ESA's purported knowledge of PlayerAuctions' conduct is attributable to Take-Two. (*See* Ex. 9 at 3.) PlayerAuctions' only support is a single, unsubstantiated statement that the 2019 Notorious Markets Comment shows "ESA, and thus Plaintiff Take-Two, had knowledge of alleged copyright infringement." (*Id.*) Glaringly absent is any explanation of how Take-Two supposedly obtained this information from ESA, *e.g.,* PlayerAuctions does not contend that Ms. Mgbojikwe (or anyone else at ESA) shared or discussed the 2019 Notorious Markets Comment with Take-Two. (*See id.*) PlayerAuctions identifies no communication between ESA and Take-Two regarding the 2019 Comment, no witness who contends such a communication occurred, and no document reflecting that the 2019 Comment was ever shared with Take-Two. Absent such evidence, PlayerAuctions can only speculate that ESA's purported knowledge somehow became Take-Two's knowledge. Rule 45 requires far more.

PlayerAuctions cannot offer more than conjecture because, as PlayerAuctions admits, Take-Two already explained how it learned about PlayerAuctions in its interrogatory responses. (*See* Ex. 9 at 3; *see also* Ex. 4 at 1-2.) Tellingly, those responses do not include the 2019 Notorious Markets Comment, and there is no evidence that Ms. Mgbojikwe can testify about anything identified in them. (*See id.)*

Therefore, PlayerAuctions has failed to satisfy its threshold burden of demonstrating that Ms. Mgbojikwe's testimony is relevant, which favors quashing the Subpoena.

### B. Any Information Ms. Mgbojikwe Possesses Can Be Obtained from Take-Two.

Even if Ms. Mgbojikwe possessed marginally relevant information, which she does not, PlayerAuctions could (and should) obtain the information from Take-Two. "Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Amini*, 300

F.R.D. at 410 (cleaned up). Indeed, courts will quash subpoenas when the issuing party already obtained, or could have obtained, the same information from party witnesses. *See id.*

PlayerAuctions concedes that Take-Two has already provided discovery describing its purported knowledge of PlayerAuctions and its infringing conduct, confirming that Ms. Mgbojikwe's deposition is duplicative and not necessary to obtain the information. Specifically, Take-Two provided verified interrogatory responses identifying documents regarding its knowledge of PlayerAuctions, including Notorious Markets Comments from 2020 to 2023 (but not the 2019 Comment), and email correspondence with PlayerAuctions from May 2022. (*See* Ex. 4 at 1-2; Ex. 5.) This interrogatory response, served under oath, confirms that Take-Two did not learn about PlayerAuctions or its infringing conduct through the 2019 Notorious Markets Comment.

Put simply, PlayerAuctions has already pursued discovery on the very subject for which it seeks to depose Ms. Mgbojikwe. To the extent PlayerAuctions believes additional testimony is necessary regarding Take-Two's knowledge of PlayerAuctions, the proper source of that testimony is Take-Two. Rule 45 does not permit burdening a non-party with cumulative discovery merely because a litigant remains dissatisfied with the answers it has received from party discovery.

In addition, PlayerAuctions represented to ESA that it inquired about Take-Two's knowledge of PlayerAuctions during the deposition of a Take-Two witness. Further, PlayerAuctions is currently seeking to depose other Take-Two witnesses, including one with "responsibilities for overseeing the enforcement of Take-Two intellectual property." (Dkt. 111 at 3-4.) PlayerAuctions can obtain testimony regarding Take-Two's actual knowledge of

PlayerAuctions from these remaining witnesses. Therefore, this factor also favors quashing the Subpoena.

**C. Deposing Ms. Mgbojikwe Will Subject Her and ESA to Additional Undue Burden.**

"Preparing and sitting for a deposition is always a burden . . . particularly for a non-party." *Amini,* 300 F.R.D. at 412. That is true here. Preparing for and defending a deposition entails witness preparation, counsel time, and disruption beyond the hours spent answering questions. The Court should assess those additional demands against the likely benefit from the non-party deposition.

Ms. Mgbojikwe has approximately nine cumulative years serving as Senior Counsel with ESA during two different periods, the first from October 2015 to February 2020 and the second starting in August 2022. (Ex. 2 ¶ 5.) In Ms. Mgbojikwe's current role, she advises ESA regarding legal and policy matters affecting the video game industry and supports ESA's advocacy efforts on behalf of its members. (*Id.* ¶ 6.) Notably, Ms. Mgbojikwe is the sole ESA policy employee responsible for the functions in her portfolio. (*Id.* ¶ 7.) She is not employed by Take-Two, has never served as counsel for Take-Two in the underlying litigation, and was not involved in Take-Two's decisions regarding the investigation or enforcement of claims against PlayerAuctions. (*Id.* ¶ 8.)

Ms. Mgbojikwe, a non-party, would have to spend many hours preparing for and then sitting for a deposition, which would significantly disrupt her ESA Senior Counsel responsibilities, which already require her to work nights and weekends. (*See id.* ¶¶ 7, 13-14.) ESA would also face additional financial burdens from its counsel having to prepare Ms. Mgbojikwe and participate in the deposition. Additionally, because midterm elections are scheduled for early November (around the close of fact discovery), Ms. Mgbojikwe is meeting with government officials almost daily.

(*See id.* ¶ 13.) No other ESA employee can fill her role. (*Id.* ¶ 14.) Given that the testimony PlayerAuctions seeks is irrelevant and duplicative of information obtained from Take-Two, this burden is undue, which also favors quashing the Subpoena.

Additionally, the burden imposed on Ms. Mgbojikwe bears no reasonable relationship to the likely value of the discovery sought. Even if preparing for and attending a deposition could be viewed as manageable in isolation, the burden becomes undue where, as here, PlayerAuctions has not shown that the witness possesses relevant, non-duplicative information. Rule 45 protects non-parties from being compelled to participate in discovery that is speculative, cumulative, and unlikely to yield meaningful evidence.

### D. In the Alternative, If Testimony is Permitted, the Court Should Impose Specific Protections.

Under Federal Rule of Civil Procedure 45, a court may modify a subpoena that subjects a person to undue burden, instead of outright quashing the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(iv). For the reasons described above, the deposition subpoena subjects Ms. Mgbojikwe to undue burden and should therefore be quashed. (*See* Section IV.A-C, *supra*.) In the alternative, if the Court permits this deposition to move forward, Ms. Mgbojikwe requests that the Court require the deposition to be remote, and limited to two hours of examination scheduled on a mutually convenient date.

## V. CONCLUSION

All three Rule 45 factors support quashing Ms. Mgbojikwe's deposition subpoena. PlayerAuctions has failed to establish that Ms. Mgbojikwe possesses relevant information concerning Take-Two's knowledge of PlayerAuctions and/or GTA V. Any information remotely connected to that issue is available directly from Take-Two and has already been the subject of substantial discovery. Yet PlayerAuctions nevertheless seeks to compel testimony from a non-

party attorney based solely on her signature on a publicly filed trade-association submission. Because the Subpoena seeks speculative, cumulative discovery while imposing a significant burden on a non-party, it should be quashed. For the foregoing reasons, Ms. Mgbojikwe respectfully requests that this Court quash the Subpoena. Alternatively, the Court should modify the Subpoena and enter the protective conditions described above. She further requests a temporary stay of compliance pending resolution of this motion.

Dated: October 13, 2026

Respectfully Submitted,

/s/ *Kimberly Paschall*
Kimberly Paschall (D.C. Bar No. 1015665)
Keyonn Pope (*pro hac vice* to follow)
Edgar Matias (*pro hac vice* to follow)
**RILEY SAFER HOLMES & CANCILA LLP**
1 S. Dearborn Street, Suite 2200
Chicago, IL 60603
T: 312.471.8700
F: 312.471.8701
kpaschall@rshc-law.com
kpope@rshc-law.com
ematias@rshc-law.com

***Attorneys for Non-Party Bijou Mgbojikwe***

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Civil Rule 7(m), on October 2, 2026, and October 13, 2026, counsel for Ms. Mgbojikwe and PlayerAuctions met and conferred regarding the subject matter of this Motion. The parties did not come to a resolution, and PlayerAuctions opposes this Motion.

*/s/ Kimberly Paschall*

**CERTIFICATE OF SERVICE**

On October 13, 2026, PlayerAuctions agreed to accept service of this Motion via email if Ms. Mgbojikwe filed and served the Motion that same day. Pursuant to this agreement, I certify that on October 13, 2026, a true and correct copy of the foregoing document was served via email on PlayerAuctions' counsel.

*/s/ Kimberly Paschall*